be submitted before this panel on oral argument, and we begin with Vazquez-Guerra v. Garland. Mr. Miller. May I please report? I am Ross Miller, and I represent the petitioners in this case, Edith Noemi Vazquez-Guerra and her daughter Wendy Chantal Berrigan-Vazquez. Petitioners were forced to flee Mexico after lead petitioner became the target of Zetas cartel members who had abducted her brother Luis Vazquez-Guerra in 2013. Although petitioner was in the United States when her brother was taken, in 2015 she returned to Mexico to care for her dying mother. Upon her return, petitioner sought out an update from the authorities investigating her brother's disappearance. Although the authorities were unable to provide any information regarding her brother's disappearance, shortly after her inquiries, petitioner was assaulted at gunpoint by Zetas cartel members, who expressly warned her that if she did not stop investigating her brother's abduction, she would end up just like he had. Shortly after, petitioner suffered a pre-stroke, and she went into hiding in order to avoid her tormentors. However, the Zetas found petitioner, and they subsequently sent her a letter threatening that she and her entire family would meet the same fate that her brother had if she did not stop investigating his disappearance. After this final threat, petitioners were forced to flee Mexico for the safety and security of the United States, where they sought asylum, withholding of removal, and protection under the UN Convention Against Torture. Your Honors, at its heart, this case is about giving effect to the plainly expressed will of Congress to protect refugees like petitioners who are persecuted because of their family ties. Petitioners respectfully request that this court reverse the decision of the board and remand their case back to the agency for two reasons. First, because the evidence of record compels the conclusion that lead petitioner suffered and fears persecution on account of her membership in the Velazquez family. And second, because the board committed reversible legal error by misapplying the burden of proof standard to petitioner's withholding of removal claim. Both issues are resolvable by an analysis of congressional intent, as it has been codified by the REAL ID Act of 2005. That act, as it relates to immigration, primarily sought to ensure that terrorists could not abuse the nation's immigration system. To that end, it introduced new standards governing credibility and corroborating evidence. I understand correctly that the IJ concluded that there was no testimony as to her siblings being harmed? That's correct, Your Honor. She has siblings in Mexico now? Yes, Your Honor. At the time of her proceedings before the immigration court, she had six siblings who remained in Mexico. However, as the record indicates, petitioner's siblings were threatened, although indirectly through her, at the second time that the Zetas cartel members threatened that they would harm and, essentially, that they would ensure that all members of her family ended up just as her brother had. Additionally, Your Honors, we believe that the record in this case clearly… But does the fact that there is this statement by the IJ, does that at least support the notion that the real rationale here is not family membership but something else? No, Your Honor. We would argue that that's not the case. The immigration judge found that petitioner's persecutors targeted her not because of her family ties to her brother but instead because they wanted to protect their criminal endeavor as it regards their involvement in their brother's disappearance. But the record simply doesn't support this conclusion. Indeed, on page 128 of the record, it's established that petitioner's mother actually witnessed the Zetas cartel members abducting petitioner's brother, Luis, and that she, in fact, cried out for help, but no one would help her because they were afraid to intervene. Subsequently, also on the record on page 128, petitioner's mother filed a police report against the Zetas cartel members who had been involved in her brother's abduction, but there's no indication that petitioner's mother was ever targeted by the cartel members, even though she was personally aware of the facts surrounding Luis's disappearance and she went to the authorities to report his disappearance. Now, Your Honors, petitioners recognize that to meet the one central reason nexus standard for asylum, the persecution targeting the protected trait can't be incidental, tangential, or superficial to another non-protected reason for the harm, as this Court recognized in the 2009 case of Shake v. Holder. However, the simple reason that an asylum applicant is targeted for both statutorily protected and non-protected grounds does not in and of itself mean that that applicant is ineligible for asylum. Again, the statutory language requires that the protected trait be at least one central reason for persecuting the applicant. And the record in this case demonstrates that petitioner was targeted, lead petitioner was targeted, because of her family ties to her brother. And we know this also based on this Court's 2013 case, Sharma v. Holder. There, a non-citizen from Nepal was targeted by communist forces in his country because he refused to support the communist party. Sharma had been abducted by his captors on his way home from a volleyball tournament, and during his detention, he told his captors that he couldn't support the communist party in his country because such support would cut against his personal and political beliefs. But when Sharma applied for asylum in the United States, the agency denied his asylum request on the basis that he couldn't meet the one central reason nexus standard because his persecutors initially targeted him for recruitment purposes and not because of his political beliefs. But this Court rejected the Board's reasoning in Sharma, and it granted his petition for relief after it found that his credible testimony compelled the conclusion that although he was initially targeted for recruitment purposes, which is not a protected ground, he was subsequently targeted as a direct consequence of his expressed opposition to communist forces in his country. As a result, Sharma stands for the proposition once again that a non-citizen can still meet the one central reason nexus standard for asylum, even where that applicant is initially targeted for a non-protected reason, so long as the subsequent persecution is directed at a protected ground. And the evidence of record in this case compels the conclusion that Lead Petitioner suffered and feared persecution in her country because of her membership in the Velazquez family. Instructive on this point is a decision from the U.S. Court of Appeals for the Fourth Circuit in the 2017 case, Cruz v. Sessions. Now, Your Honors, petitioners understand that the Fourth Circuit's decision in Cruz is certainly not binding authority on this Court. However, because asylum is determined on a case-by-case basis, and since the facts in Cruz are largely similar to those in this case, it's a persuasive authority. Specifically, in Cruz, an asylum applicant, her husband was murdered, and her husband's murderer was his employer. And Cruz began asking questions of the employer regarding her husband's disappearance, and as a result of that questioning, he threatened that she would end up just like her husband had and that her child would also end up just like her husband had if she did not stop asking questions about his disappearance. When she came to the United States and applied for asylum, however, the Board denied Cruz's asylum request, also on the basis that she couldn't meet the one central reason nexus standard. And the reasoning is very similar to the case at Barr. They concluded that her persecution wasn't related to her familial ties to her husband, but was instead related to the fact that her husband's murderer simply didn't want her to go to the police and seek out assistance to investigate his disappearance. But the Fourth Circuit also rejected that reasoning, and it granted her a request for asylum after it concluded that the Board failed to consider the intertwined reasons for why she would be seeking out an update on her husband's disappearance in the first place, and that is her family ties to her husband. Petitioners would submit that their case is actually even stronger factually than those presented in Cruz, because here, Petitioner had no inside knowledge about the events surrounding her brother's disappearance. Once again, she wasn't even in Mexico when Luis was taken. Instead, she returned several years later, and she sought out an update from the authorities. The authorities weren't able to provide her an update, but as a direct consequence of her asking those questions, the Zetas cartel members targeted her on two separate occasions. The first occasion, once again, she was assaulted at gunpoint, and during both occasions she was warned that if she continued seeking out an update from the authorities on her brother's disappearance, she would end up just like he had. And on the second occasion, the Zetas cartel members actually warned that her entire family would end up like Luis had if she... But do I recall correctly that in Cruz she actually stopped... I'm sorry, let me rephrase. That she promised the cartel that she was not going to do any more police contact, she was going to play ball. That's correct. And yet they still pursued her. That's correct. That's different from this case then, isn't it? It is different, Your Honor, but again, the key difference that distinguishes or that rather makes Petitioner's case even more compelling under this factual scenario is, again, the fact that she didn't have any inside information about her brother's disappearance whatsoever. So it cannot be said that she's being targeted for recruitment purposes or for extortion purposes or to protect the cartel members' criminal enterprise as it regards their involvement in her brother's disappearance because... The information here from the BIA was just simply she was continuing to want to pursue criminal relief. That is the problem, not what she knows, but just the fact that she's asking for police intervention. Well, that is what the agency concluded, Your Honor, but again, the record supports the conclusion that she was targeted specifically because she was seeking out the updates, again, for her brother's disappearance. If the family relationship didn't exist in this case, there is no persecution. Therefore, the family relationship cannot be subordinate to another non-protected reason for the harm. It's an essential element of her persecution, Your Honor. So if she was engaging in the same behavior with regard to a friend, investigating, trying to follow up, and was receiving the same threats, she loses. She likely would not be able to establish the one central reason nexus element in that scenario, Your Honor, if she was, say, a concerned citizen simply asking for an update about an individual in her community who had been targeted and abducted by cartel members. That's correct. Your Honors, additionally, even if this court finds that petitioners cannot meet the one central reason nexus element for their asylum claim, the evidence of record still compels the conclusion that they established their eligibility for withholding of removal. And that brings me back to my second point, and that is that Congress clearly requires applicants for asylum and withholding of removal to meet different burdens of proof to establish the nexus elements in their claims. As noted previously, under the REAL ID Act, an asylum applicant must show that a protected trait was or will be one central reason for the persecution alleged. But to qualify for withholding of removal, Congress only requires that the protected trait be a reason for the persecution, which is clearly a lower nexus standard, as recognized by the U.S. Court of Appeals for the Ninth Circuit in the 2017 case Barajas-Romero v. Lynch. There, the Ninth Circuit concluded that the statutory language unambiguously requires one conclusion, that nexus in asylum is governed by the one central reason standard, but that nexus in the withholding of removal context is governed by the lower burden of proof standard, the A reason standard. And, Your Honors, beyond this plain statutory language, that interpretation is inherently reasonable. An applicant for withholding of removal must demonstrate it is more likely than not she will be persecuted, whereas an applicant for asylum need only demonstrate a well-founded fear of future persecution. As the U.S. Supreme Court noted in the 1987 case INS v. Cardoza-Fonseca, the well-founded fear threshold can be satisfied with a mere 10% chance of persecution. In light of this reality, the Ninth Circuit concluded in Barajas-Romero that since for withholding of removal, an applicant must establish a heightened probability of persecution instead of just a well-founded fear. Congress clearly diluted the nexus standard in order to ensure against accidental removals where a protected ground is at play. And, Your Honors, counsel would note that the Sixth Circuit came to a similar conclusion in the 2020 case Guzman-Vasquez v. Barr. That case wasn't cited in our opening brief because it came out after briefing had concluded in this matter, but we submitted a 28-J letter to apprise the court of the Sixth Circuit's holding in Guzman-Vasquez. And in Guzman-Vasquez, the Sixth Circuit agreed with the Ninth Circuit's conclusion that the statutory language unambiguously requires a lower burden of proof standard for the nexus element in the withholding of removal claim. But it also found that even if the statutory language were ambiguous, the Board's decision in the 2010 case Matter of CTL in which the agency applies the Asylum Statute's one central reason nexus standard to withholding of removal claims was not reasonable and was thus not entitled to deference. It wasn't reasonable, according to the Sixth Circuit, because these are clearly two different forms of relief with different eligibility requirements and different benefits conferred. For instance, an individual who's granted asylum is able to adjust their status to that of a lawful permanent resident after just one year, whereas an individual who's granted withholding of removal is not eligible to adjust status and can, in fact, still be removed to a safe third country. Your Honours, we respectfully submit that the agency erred in this matter and that this Court should reverse the Board's decision. I respectfully reserve the rest of my time for rebuttal. Yes, you've saved time for rebuttal. Thank you, Mr. Miller. Mr. Marcanda? May it please the Court, good morning. Scott Marcanda, MARCLNDA, on behalf of Respondent Attorney General of the United States. The record does not compel the conclusion that Petitioner warrants asylum or withholding of removal. The genesis of her single physical encounter with the Zetas was following up with police on the disappearance of her brother. The gang members targeted her to prevent her from doing so and not because of membership in her family with her brother's family. We know this because they said so. Moreover, Petitioner's siblings continue to reside in Mexico without incident, and general conditions of criminal violence and civil unrest affecting the Mexican population as a whole are not cognizable grounds for asylum. In short, there simply is no nexus. Petitioner was not selected for harm because of her family. Specifically, the agency determined that the motive of the alleged persecutors was one of criminal intention. The Zetas did not want lead Petitioner to continue to pursue the investigation of her kidnapped brother. It is clear from her testimony and her Form 589 asylum application she arrived back in Mexico two years after the brother disappeared in approximately June of 2015. She stated she remained there for approximately two weeks and then went to the police to check on the status of her disappeared brother. She went approximately three times and it was only after she went to the police station to check on the disappearance that she was threatened by the Zeta group. And the Zetas made it very clear by telling her that they wanted her to quit looking for her brother. Now, brother is just another acronym here because it's quit looking for the person you think we disappeared, quit looking for the person that you think we killed, quit getting the police involved in this. Who happens to be your brother? Another way to put it is it's not what the gang is concerned about, it's what she's concerned about. Yes, Judge Ho. Petitioner going to the police, her motivation was the relationship. Her motivation is family, not the gang. Her motivation is family. She could have gone because it was a friend. She could have gone because someone asked. She could have gone because she was a reporter and was following up on the story on a cold case that's two years old. She went because it was her brother. The gang does not care. We do not like, as a cartel, anyone stirring the hornet's nest at the police department and trying to get them to investigate a cold case, and we don't care why you went there. And that is what the agency determined. Substantial evidence supports that determination, and there is not sufficient evidence to compel an alternate contrary factual finding by the agency in this regard. They warned her not to go to the police, and based on those explicit statements, we don't have to infer what the intent was here. They told us. We don't have to extrapolate. We don't have to infer. They specifically said, and I'm sure the Corps is familiar with the matter of LEA. We call it LEA 1. This is back in 2017, and they talk about expressing an animus towards the family. That wasn't the case here. The mother and the six siblings, so we'll call them seven, resided in Mexico without harm. Mother made a report to the police, and that was it. Without harm for the two years until petitioner came back. New girl in town. She's there for a couple weeks, stirs up the nest. That's the thing that's different. If it was blood ties, they were there before. They remain there still. No harm. You want to talk about the Cruz case from the Fourth Circuit? Not particularly. Just the opposing counsel argues that it's on point, so what's your response? We would disagree, simply because there really isn't a mixed motive here. We don't think you get past that first but for analysis. The motive is clear. If you want to have it bleed over and say, well, yes, it could also be because... You're saying there were two motives there. There's only one here. Yes, sir. And without being cavalier with opposing counsel's honorable argument, even if there was one, under shake in this Court's binding precedent, the tangential, subordinate, incidental reason clearly doesn't override the gang's desire to preserve its integrity, to preserve its criminal enterprise, to keep quiet and not have the police follow up with us. That's what this petitioner did. And threatening generally to the family as a whole is just another way of bringing pressure upon her, and she left and it stopped. That's the only thing that's changed. So, basically, the persecutor's treatment of her was to prevent her from investigating her brother's disappearance and not based on the fact that she was the immediate relative of her brother. These motivations do not constitute persecution on account of a protected ground. Any violence or harassment that she experienced is based on the criminal motive and not one of the five protected grounds. In addition, conduct that is done by criminal motives does not constitute persecution. That's this Court's case, Thury v. Ashcroft, 385 F. 3rd, 788, previously citing Orellana Monson, 685 F. 3rd, 511 at 516 and 520. This is actually well-trod ground here. Turning to the second argument about the standard for evaluating nexus in an asylum context versus a withholding context, this Court addressed that exact issue about 33 days ago with the exact same petitioner's counsel's law firm using the exact same argument and the exact same 28J letter. That was Cortez-Ramirez v. Garland. It's only the Westlaw site, 2021 Westlaw 2303048 at 4, 5th Circuit, June 4, 2021. And in there, the Court said that regardless of the arguments in Barajas and regardless of the arguments in Guzman out of the 6th Circuit, this Circuit has already adopted the contrary one central reason interpretation under binding precedent and shake. Establishing the same standard for nexus applies to both applications for asylum and mandatory withholding of removal. Thus, the Board does not abuse its discretion when it found petitioner necessarily could not establish entitlement to mandatory withholding if he failed to establish entitlement under asylum. I have nothing further unless the Court has further questions for me. Thank you, Mr. Mercando. Mr. Miller, you've saved time for rebuttal. Mr. Mercando made reference to, I assume, to the record when he said that the gang members acknowledged that they were not concerned about her family membership or that that's not the reason they were going after her. Can you reflect on what the record says about that or about Mr. Mercando's statement? Petitioners would disagree with that characterization of the evidence of record. On the contrary, when petitioner was persecuted the second time by the Zetas cartel members, they expressly told her that not only would petitioner meet the same fate as her brother if she didn't stop investigating his disappearance, but that her entire family would meet the same fate. So the argument that her family ties or that there was no animosity against the family simply isn't supported by the record. Once again, petitioner... But for the fact that she was Luis's sibling, she would have never gone to the authorities to investigate what was occurring regarding the investigation into his disappearance in the first place. If we remove that family relationship, petitioner would not be targeted. Therefore, it cannot be said that her family ties are subordinate to any other nonprotected reason for the harm. And, Your Honors, opposing counsel noted something very telling... He's saying if you remove the family relationship. Back to my earlier question. It's plausible that the very same thing could be happening to someone just based on the same conduct that she's engaging in, which is trying to pursue who did it for some criminal activity. I mean, it's not implausible that somebody could be subjected to threats and all that for doing the same thing she's doing. And you're saying, but the only reason that's happening to her is because of her family relationship. Yes, Your Honor, and again, what confirms this reality is that her family beyond petitioner was used as a threat against her in order to get her to conform to what the Zetas cartel members wanted her to do, which was to stop asking... But what do you make of the government's point that it's really about what motivates her, not what motivates the gang? The gang's just trying to protect itself. The family focus is all coming from her on both ends, not just her interest in the brother, but also a way to discourage her from pursuing it. Certainly, Your Honor. Again, we would argue that the record simply doesn't support that conclusion. Again, the lead petitioner wasn't even in Mexico when her brother was taken. She had no direct knowledge. But she stops pursuing the matter, and then they stop going after her. Well, Your Honor, that's only after she fled Mexico and returns to the United States. I'm sorry, let me focus on another fact, and it's the fact that they actually don't go after any of the other siblings. They're only going after her because she's the only one pursuing criminal enforcement. Well, we would still submit, once again, that the record shows that her family members were threatened, that the gang members said they would all meet the same fate as... Did the gang... Sorry, please. But if she were a friend of the victim and not a relative, and I was trying to pressure her to do something, one of the best ways to pressure her, the friend of the victim, one of the best ways to pressure her would be to threaten her family. And in that regard, Your Honor, I mean, the family relationship, at least as regards her persecution, would still be critical to why the motives or the means that the gangs are trying to use in order to gain her compliance. If I'm in the gang, I'm trying to keep my criminal activity. I'm trying not to be prosecuted for my criminal activities. I don't want anybody pursuing anything that could lead to me being prosecuted. I don't care whether they're a friend of the victim or a relative, whoever they are. But if I got somebody who's a friend, it's just as plausible that I'd be threatening their family because they're the one who's pursuing the investigation. And that's what's happening here. She's pursuing... She was pursuing the investigation. They don't want her to. Well, Your Honor, again, we would argue that the record simply doesn't support that ultimate conclusion because one of her... Did the gang ever threaten the other family members or just told this woman, your client, that they would threaten the family members? They didn't directly threaten the other family members. She's the only one who heard that. That's correct, Your Honor. In fact, we believe this supports our position because, once again, her mother actually witnessed the individuals who abducted her brother. She was there, and she filed the police report. She's the one who filed the report, and she wasn't persecuted. Additionally, when the gang members threatened her, they communicated that they were responsible for Luisa's disappearance, and they told her that they were Zeta's cartel. But if they were interested in persecuting the family for family reasons, you think they would do something to those family members? We would argue that they did, Your Honor, by threatening to harm all of the family members as they did to petitioners. Thank you, Your Honor. Thank you. Your case is under submission.